IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HARVEST RESTAURANT HOLDINGS, LLC,** | : : : | **CIVIL ACTION** |
| Plaintiff, | : : | **NO. 22-1291** |
| v. | : : | |
| **THE HARTFORD A/K/A THE HARTFORD FIRE INSURANCE CO.,** | : : : | |
| Defendant. | : | |

### ORDER

**AND NOW**, this 29th day of November, 2022, upon consideration of Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 4), it is hereby **ORDERED** that Defendant's Motion (ECF No. 4) is **GRANTED;**[1] **THIS ACTION IS DISMISSED WITH PREJUDICE, WITHOUT LEAVE TO AMEND**.[2] The Clerk of Court shall mark this matter **CLOSED**.

**IT IS SO ORDERED**.

BY THE COURT:

_/s/ John Milton Younge_
**JUDGE JOHN MILTON YOUNGE**

---

[1] **FACTUAL BACKGROUND:**
In this action, Plaintiff—the owner and operator of nine separate restaurant entities—has asserted claims for declaratory judgment and breach of contract against Defendant—an insurance provider—for Defendant's denial of claims covering business income, civil authority, and extra expense losses incurred in connection with mandated governmental closures resulting from the COVID-19 pandemic. (Ex. A, Compl., ¶¶ 61-119, pp. 22-32, ECF No. 1.) Defendant rebuts Plaintiff's claims by highlighting how Plaintiff has failed to satisfy the prerequisites to coverage across the three aforementioned categories and by noting how the insurance policy's virus exclusion provision bars coverage for losses stemming from the COVID-19 virus/pandemic. (Brief in Supp. of Def. Mot. to Dismiss, pp. 7-20, ECF No. 4-1.) Currently before this Court is Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim. (ECF No. 4.)

**LEGAL STANDARD:**
The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To

survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Third Circuit and the United States District Court for the Eastern District of Pennsylvania (the "Eastern District") have previously held that "[u]nder Pennsylvania law, '[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement.'" *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 426 (E.D. Pa. 2020) (quoting *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008)). Further, as the Pennsylvania Supreme Court has noted, "[w]hen the language of an insurance policy is clear and unambiguous, a court applying Pennsylvania law is required to give effect to that language." *Id.* (quoting *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 583 Pa. 445, 455 (2005)). Finally, the Pennsylvania Supreme Court advised courts construing Pennsylvania law not to "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Id.* (citing *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606 (1999)).

**DISCUSSION:**
In this case, the insurance policy's "Virus Exclusion" provision notes, in relevant part, that:

> "We [Defendant] will not pay for loss or damage caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of…virus."

(Ex. A., Policy Form PC 10 10 01 18 (pp. 1-2), pp. 147-148, ECF No. 1.) Perhaps most fatal for Plaintiff's claims, "[n]umerous courts, applying Pennsylvania law, have thoroughly [examined] arguments regarding the Virus Exclusion's applicability to insurance claims based on COVID-19 shutdowns. These cases have almost unanimously concluded that the…Virus Exclusion [language] unambiguously bars coverage." *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, 539 F. Supp. 3d 409, 423–24 (E.D. Pa. 2021); *see also Fuel Recharge Yourself, Inc. v. Amco Ins. Co.*, No. CV 20-4477, 2021 WL 510170, at *2 (E.D. Pa. Feb. 11, 2021) ("Because I conclude that…the Virus Exclusion unambiguously applies to Fuel's claim for loss of business income and extra expenses, I must grant Defendant's motion to dismiss with respect to Plaintiff's breach of contract claim and request for declaratory relief."); *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, 516 F. Supp. 3d 450, 460 (E.D. Pa. 2021) ("The Court declines to find ambiguity where there is none, let alone to adopt a reading that is not reasonable. Frank Van's does not offer any other compelling argument as to why the Virus Exclusion does not bar its claim."); *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 503 F. Supp. 3d 251, 255 (E.D. Pa. 2020) ("The Virus Exclusion applies to 'loss or damage caused by or resulting from any virus…that induces or is capable of inducing physical distress, illness or disease.' The language is not ambiguous, and it applies to Covid-19, which is caused by a coronavirus that causes physical illness and distress."); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 295 (S.D. Miss. 2020) ("Plaintiff is not the first policyholder to argue in court that executive/government orders issued during the COVID-19 pandemic that have affected their operations trigger insurance under Business Income/Extra Expense provisions identical to the one at issue in the Policy here. Most courts have rejected these claims and granted motions to dismiss based on the finding that the businesses' complete or partial closures due to government orders issued to slow the spread of COVID-19 do not constitute 'direct physical loss of or damage to property.'"); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 495 F. Supp. 3d 848, 854–55 (C.D. Cal. 2020), *motion to reopen granted,* No. CV 20-3619 PSG (EX), 2020 WL 9395223 (C.D. Cal. Dec. 3, 2020) ("The Court finds the Virus Exclusion provision precludes all civil authority coverage such that Travelers has no duty to perform under the Policy. Furthermore, because there was no physical damage to G&G's property, the Business Income and Extra Expenses coverage does not apply.").

Despite this seemingly unanimous precedent in favor of the policy's Virus Exclusion provision barring coverage, Plaintiff alleges that two limited coverage provisions differentiate this case from others and actually contemplate coverage in connection with the COVID-19 pandemic.

The first provision (Limited Coverage – Property) reads as follows:

**PROPERTY CHOICE - SPECIALIZED PROPERTY INSURANCE COVERAGES FOR RESTAURANTS - DELUXE**

**15. "FUNGUS", WET ROT, DRY ROT, BACTERIA AND VIRUS - LIMITED COVERAGE**
   a. The coverage described below only applies when the…virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

   (1) A "specified cause of loss" other than fire or lightning;

   (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises; or

   (3) Flood, if the Causes of Loss Flood endorsement applies to the affected premises.

(Ex. A., Compl. ¶¶ 22-23, p. 14-15, ECF No. 1; Ex. A., Policy Form PC 50 59 01 18 (p. 6), p. 106, ECF No. 1.)  Though Plaintiff alleges that "'specified cause of loss' is not defined," (Ex. A., Compl. ¶ 23, p. 15, ECF No. 1), the insurance policy actually does define the term as consisting of "lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; 'Sinkhole Collapse'; 'Volcanic Action'; falling objects; weight of snow, ice or sleet; water damage, 'Sprinkler Leakage'; 'Theft'; or 'Building Glass' breakage. (Ex. A., Policy Form PC 00 90 01 19 (p. 6), p. 125, ECF No. 1).  Similar to the Fifth Circuit's persuasive analysis of a similar limited coverage provision, this Court concludes that Plaintiff "has not alleged one of the enumerated specified causes of loss listed in the policy, nor has it alleged an equipment breakdown [or even a flood]. The Limited Virus Coverage therefore does not apply at all." *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 261 (5th Cir. 2022).

The second provision (Limited Coverage – BI/EE) mimics the first, but also adds additional language:

**PROPERTY CHOICE BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM - ADDITIONAL COVERAGES**

**6. "FUNGUS", WET ROT, DRY ROT, BACTERIA AND VIRUS - LIMITED COVERAGE**
   a. The coverage described below only applies when the…virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

   (1) A "specified cause of loss" other than fire or lightning;

   (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises; or

   (3) Flood, if the Causes of Loss Flood endorsement applies to the affected premises.

3

> b. The following applies only if Business Income and/or Extra Expense coverage applies to the "Scheduled Premises" and only if the necessary interruption of your business operations satisfies all terms and conditions of this Coverage Part.
>
>> (1) If the loss which results in…virus does not in itself necessitate a necessary interruption of your business operations, but such interruption is necessary due to loss or damage to property caused by…virus, then our payment under Business Income and/at Extra Expense is limited to the amount at loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(Ex. A., Policy Form PC 26 02 01 18 (p. 5), p. 132, ECF No. 1.)  Plaintiff seeks to use this Subsection 6(b)(1) to argue that the insurance policy provides coverage "where the virus alone causes the loss." (Ex. A., Compl. ¶ 27, p. 16, ECF No. 1.)  However, Plaintiff overlooks that this section is preceded by language—in Subsection 6(a)—which explicitly states that the coverage described below **only applies when the…virus is the result of a specified cause of loss.**  For the avoidance of doubt or confusion, it is also worth noting that Subsection 6(b)(1) creates a prerequisite to coverage—which requires a **"loss which result[ed] in…virus"**—thereby presuming that any covered virus would have to be the *result* of the loss and not the *cause* of the loss (as is the case here given that the COVID-19 virus *caused* Plaintiff's losses).  In reviewing a subsection that is almost identical to Subsection 6(b)(1), the Fifth Circuit effectively illuminates the work that the language of the limited coverage provision is actually doing with respect to coverage allocation:

> The subsection does offer some limited coverage. In order to get it, a couple of things must happen. First, a loss causes a virus. That first loss does not require a suspension of operations. Second, the virus (that was caused by the first loss) causes a different loss. That second loss *does* require a suspension of operations. Third, and finally, the payment for the suspension of operations caused by the loss from the virus, will be limited to 30 days.
>
> [The plaintiff] does not allege that it suffered a loss that caused a virus, and that the virus in turn caused a loss which then led to the suspension of its operations. In fact, [the plaintiff] makes clear that its loss *is* the suspension of its operations. Regardless, a suspension of its operations first requires a physical loss of or damage to property. And as we have already concluded, that is absent here.

*Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 261–62 (5th Cir. 2022)

Given the weight of the precedent supporting the notion that Defendant's Virus Exclusion bars business income, civil authority, and extra expense coverage and the Fifth Circuit's persuasive guidance that the two limited coverage provisions do not apply, this Court declines to delve any further into the question of whether Plaintiff's fact-specific claims would even fall within the scope of the coverage—as such an inquiry would be futile.  *See*, *e.g., Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 426 (E.D. Pa. 2020) ("It is not necessary for the Court to decide whether Plaintiffs' claim falls within the scope of coverage, because even assuming that it does, a virus exclusion applies here.").

**CONCLUSION:**
Taken together, this Court finds that Plaintiff's request for declaratory judgment—Counts I (Civil Authority Coverage), III (Business Income Coverage), and V (Extra Expense Coverage)—and claims of breach of contract—Counts II (Civil Authority Coverage), IV (Business Income Coverage), and VI (Extra Expense Coverage)—are hereby dismissed for failure to state a claim.

[2] **PRECLUDING LEAVE TO AMEND COMPLAINT:**
When a motion to dismiss is granted, the court must then decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g.*, *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000)*; Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

For the reasons identified above, the Virus Exclusion bars coverage of and recovery for the business income, civil authority, and extra expense losses incurred in connection with the COVID-19 pandemic. Given this determination, a leave to amend would be futile—especially since a second amended complaint could not overcome the Virus Exclusion and would not withstand a renewed motion to dismiss.